UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UMASS MEMORIAL MEDICAL CENTER, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-40274-FDS |
| v. | ) ) ) | |
| UNITED FOOD AND COMMERCIAL, WORKERS UNION, LOCAL 1445, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND FOR ATTORNEY'S FEES**

**SAYLOR, J.**

This is an action to vacate an arbitration award. The award was entered in a dispute between plaintiff UMass Memorial Medical Center, Inc. and defendant United Food and Commercial Workers Union, Local 1445 (the "Union"). Plaintiff contends that the award must be vacated pursuant to 9 U.S.C. §10(a), on the grounds that the arbitrator exceeded his powers and that the award is contrary to the plain language of the parties' collective bargaining agreement. The Union responds that the award is valid, as it draws its essence from the agreement, rather than from the arbitrator's own notions of fairness and equity.

Pending before the Court is plaintiff's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Defendant has cross-moved for summary judgment confirming and enforcing the arbitrator's award. Defendant further seeks attorney's fees.

For the reasons set forth below, plaintiff's motion for judgment on the pleadings will be

denied. Defendant's motion for summary judgment will be granted, although its request for attorney's fees will be denied.

## I.     Factual Background

The following facts are apparently undisputed.

### A.     The Collective Bargaining Agreement

The Union and UMass are parties to a collective bargaining agreement ("CBA"). In a provision entitled "Grievance Procedure and Arbitration," the CBA sets forth procedures for resolving disputes between the parties. It states, in relevant part:

Step One

An alleged grievance shall be presented in writing with the date the grievance occurred by any individual employee or group of employees together with their steward, if desired, to the manager or designee within seven (7) calendar days after the grievant knew or should have known of the event giving rise to the grievance.

(Compl., Ex. 2 at 13). The CBA further specifies:

Any grievance not presented within the specific time frames specified in Step One, Two, or Three, shall be forfeited and waived by the aggrieved party and the Union.[1] Extensions of the time frames referenced above may be granted upon mutual written agreement between [UMass] and the Union.

(Compl., Ex. 2 at 13).

As to the authority of the arbitrator, the CBA provides:

The jurisdiction and authority of the arbitrator and his opinion and award shall be confined exclusively to the interpretation and/or application of the specific provisions of this Agreement.

The arbitrator shall have no authority to add to, detract from, alter, amend, or modify any provisions of this Agreement . . . ."

---

[1] Steps Two and Three provide further deadlines in the CBA's grievance process. These provisions are apparently not material to the present action.

(Compl., Ex. 2 at 13).

### B. The First Arbitration

The Union submitted a grievance to UMass on October 26, 2004. The grievance was filed on behalf of certain employees classified as phlebotomists, and alleged that plaintiff had violated the CBA by not paying them a shift differential for holidays they did not work. Because the parties were unable to resolve the matter, it was ultimately submitted to binding arbitration, as required by the CBA.

After hearings and consideration of the parties' briefs, arbitrator John Cochran entered his award on September 29, 2005. The award stated that

> UMass Memorial Medical Center violated the collective bargaining agreement with Local 1445, UFCW by not paying phlebotomists who start work at 5:00 a.m. shift differential pay for holidays that they do not work. Therefore, UMass shall make those employees whole for the shift differentials they did not receive on the holidays they did not work.

(Compl., Ex. 5 at 13).[2]

### C. The Second Arbitration

On November 9, 2005, the Union again filed a grievance concerning plaintiff's failure to provide differential pay for holidays not worked. This latter grievance, however, was brought on behalf of "all UFCW members." (Compl., Ex. 1). Although this submission did not initially specify a particular date on which the grievance allegedly occurred, the Union later clarified that it arose from "each holiday since November 28, 2003, when employees covered by the union contract who were on the day shift and were scheduled to work beginning before 6 a.m. but were

---

[2] At the arbitration hearing, the parties apparently agreed that the award would apply to an additional employee who is not a phlebotomist, Richard Simakauskas.

not paid 'all differentials' with their holiday pay." (Compl., Ex. 3).

The matter was scheduled for arbitration and an arbitrator, Gary Altman, was selected. Prior to the hearing, UMass filed a "Motion to Bifurcate and Dismiss as Procedurally Not Arbitrable." In that motion, plaintiff contended that when the first grievance was filed in October 2004, the Union knew of the alleged violation of the CBA and knew that it extended to a class of Union members broader than phlebotomists. It further argued that because the Union had not raised the issue on behalf of all Union members within seven days of knowing of the violation, as required by Step One of the CBA's grievance procedures, the November 9 submission was time-barred.

Following a hearing, the arbitrator issued an award and a supporting opinion on November 2, 2006. He concluded that the Union's second grievance was timely and therefore procedurally arbitrable, stating:

> The dispute in the present case, however, does not have a specific end date; it recurs every time there is a holiday and the employees are not paid the relevant differentials. It is analogous to a claim that an employer is paying incorrect wages or benefits.
>
> An alleged wrongful denial of the appropriate wage rate recurs every time an employee is paid the incorrect rate of pay. The Union's grievance 'is a claim for damages as a result of the employer's failure to pay an employee at the rate established for the classification to which the employee is assigned.' . . . In other words, each holiday that the violation allegedly occurs is considered a new event which can trigger the filing of a grievance. A continuous violation is distinguishable from disciplinary actions . . . or the failure to promote, events which are completed and defined by a specific date. Thus, in the present case, the seven day time period can not [sic] preclude the filing of the grievance in the present case [sic]. This determination, however, does not mean that the grievants should be able to seek damages from the date of the first alleged violation. Although the alleged breach of the Agreement has been continuing, occurring each day the grievants have not been paid the appropriate rate, any remedy, should a violation be found, can not [sic] be retroactive to November of 2003, when the contract came into existence, but instead from the date this present

grievance was filed.

(Compl., Ex. 11 at 9-10). The arbitrator went on to hold that "[T]he grievance must be sustained. The grievants must be paid for all applicable differentials for holidays that they do not work. This remedy shall apply for all holidays that occurred after the date that the present action was filed." (Compl., Ex. 11 at 13).

**II.  Procedural History**

Plaintiff filed the present action in this Court on December 14, 2006. In its complaint, UMass seeks a judgment vacating the arbitrator's award. Defendant filed its answer, along with a counterclaim to confirm and enforce the award, on January 8, 2007.

On January 12, plaintiff moved for judgment on the pleadings, contending that the award must be vacated pursuant to 9 U.S.C. § 10(a) on the grounds that the arbitrator exceeded his authority and violated the CBA's express terms when he concluded that the second grievance was procedurally arbitrable. Defendant moved for summary judgment and for attorney's fees on January 19.

**III.  Analysis**

    **A.  Standard of Review**

        **1.  Motion for Judgment on the Pleadings**

"The standard for evaluating a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is essentially the same as that for deciding a Rule 12(b)(6) motion." *Mongeau v. City of Marlborough*, 462 F. Supp.2d 144, 148 (D. Mass. 2006) (citing *Pasdon v. City of Peabody*, 417 F.3d 225, 226 (1st Cir. 2005)). After viewing the facts contained in the pleadings in the light most favorable to the non-movant and drawing all reasonable inferences therefrom in their favor,

judgment is appropriate "if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Aponte-Torres v. University of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006).

### 2.  Motion for Summary Judgment

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is upon the moving party to show, based upon the pleadings, discovery, and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor.  *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).

## B.  Review of Arbitral Awards

When determining whether to uphold or vacate an arbitration award, federal courts apply "one of the narrowest standards of judicial review in all of American jurisprudence." *Lattimer-Stevens Co. v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir. 1990).  "[D]isputes that are committed by contract to the arbitral process almost always are won or lost before the arbitrator. Successful court challenges are few and far between." *Teamsters Local Union No. 42 v. Supervalu, Inc.*, 212 F.3d 59, 61 (1st Cir. 2000).

This extraordinary deference is particularly important in the context of labor-management arbitration, which the United States Supreme Court has held "should be well-protected from over-intrusive judicial review." *Shaw's Supermarkets, Inc. v. United Food & Commercial Workers*

*Union, Local 791*, No. 03-11049 (D. Mass., Jan. 19, 2007) (citing *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)). As the Supreme Court has explained,

> the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Enterprise Wheel & Car*, 363 U.S. at 599.

The First Circuit has similarly adhered to this strict standard. As the Court described it in *Keebler Co. v. Truck Drivers, Local 170*, 247 F.3d 8, 10 (1st Cir. 2001), "[j]udicial review of arbitral awards is 'extremely narrow and exceedingly deferential.'" (citing *Bull HN Info. Sys. v. Hutson*, 229 F.3d 321, 330 (1st Cir. 2000)). Though the arbitrator's award must "draw its essence from the contract that underlies the arbitration proceeding, courts will deem that benchmark achieved as long as the arbitrator[] [is] even arguably construing or applying the contract and acting within the scope of [his] authority." *Cytyc Corp. v. DEKA Prods. Ltd. P'ship*, 439 F.3d 27, 32 (1st Cir. 2006) (quotation and internal citation omitted). Thus, a federal court will overturn an arbitrator's interpretation only if "it can be shown that the arbitrator acted in a way for which neither party could have bargained." *Local 1445, UFCW Int'l Union, AFL-CIO v. The Stop & Shop Co.*, 776 F.2d 19, 21 (1st Cir. 1985) (citing *Enterprise Wheel & Car*, 363 U.S. at 599).

Despite this extraordinarily deferential standard of review, "there are nevertheless a few exceptions to the general rule that arbitrators have the last word." *Cytyc*, 439 F.3d at 32-33. One set of these exceptions is set forth in the Federal Arbitration Act ("FAA"), which "authorizes vacatur only in cases of 'specified misconduct or misbehavior on the arbitrators' part, actions in

7

excess of arbitral powers, or failures to consummate the award.'" *Id.* (quoting *Advest, Inc. v. McCarthy*, 914 F.2d 6, 8 (1st Cir. 1990)); 9 U.S.C. § 10(a).

A second set arises from "the federal courts' inherent power to vacate arbitral awards." *Cytyc*, 439 F.3d at 33. As an example of this "very narrow" authority, the First Circuit has provided:

> One manifestation of it, usually (but not exclusively) associated with labor arbitration, arises when an award contravenes the plain language of the applicable contract.

*Id.* (internal citations omitted). The First Circuit emphasized, however, that "[d]espite the existence of these exceptions, great deference remains the general mode of approach to judicial review of arbitral awards." *Id.*

### C. Whether the Arbitrator's Award Should Be Vacated

In the present case, plaintiff contends that the award must be vacated under the FAA on the grounds that the arbitrator exceeded his powers. Specifically, UMass asserts that the arbitrator overstepped his jurisdictional authority when he concluded that the grievance was timely filed, and that he therefore exceeded his powers when he proceeded to consider the matter on its merits. UMass also appears to invoke the Court's inherent power to vacate the award, contending that the arbitrator's holding violates the CBA's express requirement that any dispute be filed within seven days of the event underlying the grievance.

UMass does not dispute that the substance of the grievance—failure to provide differential pay for holidays not worked—was covered by the CBA and was an appropriate issue for arbitration. Indeed, as the record shows, the parties had previously arbitrated the same issue with respect to phlebotomists. Nor does UMass dispute that it is for the arbitrator to decide whether a

given grievance is timely or otherwise procedurally arbitrable under the terms of the agreement. Rather, its argument is that the arbitrator's holding—that the Union's second grievance was timely—violated the terms of the contract and should be vacated on that basis.

Mere disagreement with an arbitrator's finding is not a sufficient basis for overturning an award. The Supreme Court has made clear that so "long as an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Nonetheless, "[e]ven under the highly deferential standard that constrains judicial review of arbitral awards, the moving party may establish entitlement to vacation of an arbitral award on a persuasive showing that the arbitrator's interpretation is contrary to the plain language of the contract." *Cytyc*, 439 F.3d at 34. Making such a showing, however, "requires the movant to demonstrate that the award is '(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact.'" *Id.* (quoting *Advest*, 914 F.2d at 8-9).

Here, the arbitrator expressly considered Step One of the CBA's grievance process, which requires that a dispute be filed within seven days "after the grievant knew or should have known of the event giving rise to the grievance." (Compl., Ex. 2 at 13). He then apparently construed the contract terms "event giving rise to the grievance" to encompass not only "a fixed event occurring on a specific date," but also a "continuing violation" which has no "specific end date." (Compl., Ex. 11 at 9). Applying the contract provision to the dispute before him, he concluded

9

that UMass's alleged violation was continuing in nature and that, on that basis, the grievance was timely under the CBA.

UMass argues in response that (1) holidays are discrete, episodic events, which the arbitrator himself acknowledged when he stated that "each holiday [upon which] a violation occurs *is considered a new event* that can trigger the filing of a grievance, (Compl., Ex. 11 at 10) (emphasis added); (2) the CBA recognizes only ten holidays;[3] and (3) none of the ten recognized holidays fell within the seven-day period preceding the filing of the grievance on November 9, 2005.[4]  Thus, UMass contends, the Union's filing was untimely under the plain terms of the CBA, as there was no holiday on which to anchor its grievance.

The arbitrator's decision is, without question, somewhat ambiguous. It certainly supports plaintiff's proposed reading that it is the holiday itself that constitutes the triggering "event," and that a grievance must therefore be filed within seven days of a holiday to be considered timely. The opinion can also be interpreted, however, as holding that the relevant "event" is not limited to the specific date of the holiday, but continues every day thereafter that the employer fails to provide the differential pay. This reading is most clearly supported by the arbitrator's statement that "the alleged breach of the agreement has been continuing, occurring each day the grievants have not been paid the appropriate rate." (Compl., Ex. 11 at 10). Under this theory, the Union's grievance would be timely, as plaintiff's violations continued through the date of filing.

Assuming that to be the case, there is considerable force to the argument that the opinion

---

[3] As set forth on page 14 of the CBA, the parties recognize the following holidays: New Years Day, Martin Luther King Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, and Christmas Day.

[4] The holiday most closely preceding the filing of the grievance was Columbus Day, on October 10, 2005. Although Veterans' Day fell within two days of the filing, on November 11, 2005, it did not occur until *after* the grievance was filed.

10

is wrong as a matter of contract interpretation. As UMass notes:

> If the Arbitrator's logic were to prevail, whereby discrete payment events tied to holidays constitute a *daily* continuing violation, then even the most discrete of all events—an employment termination—would be deemed timely because the employee remains terminated each and every day following the actual termination.

(Pl.'s Sur-Reply at 2 n.1) (emphasis in original). Indeed, under that theory, arguably every act or omission that was not resolved to the Union's satisfaction would constitute a "continuing" violation, effectively nullifying the seven-day rule.

The fact that the arbitrator's opinion is subject to alternate readings is not fatal. As the Supreme Court stated in *Enterprise Wheel & Car*, "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." 363 U.S. at 598. Nor is the mere fact that this Court might disagree with the arbitrator's intrepretation of the contract; a belief that the arbitrator's decision was imprudent or constituted "serious error" is insufficient to overturn the award, so long as the arbitrator was "arguably construing or applying the contract." *Misco*, 484 U.S. at 38.

In the Court's view, the arbitrator's opinion is an incorrect interpretation of the contract. That is not, however, the relevant standard. Rather, the issue is whether the arbitrator's decision is "so unfounded in reason and fact as to justify judicial correction." *Cytyc*, 439 F.3d at 34.[5]

---

[5] Plaintiff also challenges the remedy awarded by the arbitrator—which states that it shall "apply for any and all holidays that occurred after the date that the present grievance was filed"—as contrary to the CBA's plain language. UMass contends that the CBA does not permit the arbitrator to fashion relief for violations which occur after the grievance is filed.

The relief awarded by the arbitrator, however, comports with his finding that UMass's violations of the CBA were "continuing." Because of their ongoing nature, the violations continued past the date of the filing and through the date on which the arbitrator's award was entered. Nothing in the CBA precludes the arbitrator's finding that it was within his power to remedy these violations. Accordingly, the Court concludes that the arbitrator's remedy was not so unfounded in reason and fact as to warrant vacating the award.

11

Under that exceedingly demanding test, this case falls short of the required threshold.  The arbitrator was certainly attempting to interpret the contract, and the Court cannot conclude that the decision was "based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling," or otherwise without a basis in reason or fact.

Accordingly, the Court concludes that the arbitrator did not exceed the powers conferred to him as arbitrator, and that his award was not contrary to the plain language of the collective bargaining agreement.  Vacating of the award is therefore not appropriate under the FAA nor pursuant to the Court's inherent power.  Plaintiff's motion for judgment on the pleadings will be denied, and defendant's motion for summary judgment, seeking confirmation and enforcement of the arbitrator's award, will be granted.

### D.	Defendant's Motion for Attorney's Fees

Defendant has moved for attorney's fees on the grounds that plaintiff's challenge to the arbitral award is "baseless and wholly unjustified."  While the Court concludes that plaintiff has failed to meet the burden required to vacate an arbitrator's award, it nonetheless declines, under the present circumstances, to order UMass to pay defendant's costs and attorney's fees.  Defendant's motion for attorney's fees will be denied and each party shall be responsible for its own costs.

## IV.	Conclusion

For the foregoing reasons:

1. the motion of plaintiff UMass Memorial Medical Center, Inc., for judgment on the pleadings is DENIED;

2. the motion of defendant United Food and Commercial Workers Union, Local 1445, for

summary judgment is GRANTED; and

    3.  the motion of defendant United Food and Commercial Workers Union, Local 1445, for attorney's fees and costs is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor  
F. Dennis Saylor IV  
United States District Judge

Dated: August 31, 2007